auld lang syne, e Good morning. May it please the court. Good morning judge. Thank you for being here. Congratulations on your appointment. Thank you. May it please the court. One short introduction, we were supposed to be here about two months ago and the court and the clerks were generous enough and the council were generous enough to put it off to today because my daughter was pregnant and had a baby. And if you're wondering, mother and child are doing fine, dad's a little tattered, but nobody really cares about him all that much. Congratulations. Thank you very much, sir. More important than becoming a federal judge. It is. Family first. This is a case that addresses the interplay between federal law and state law, whether you can have a civil rights claim and medical malpractice claim at the same time. It's here on 12B6 motion, whether or not we were able to plead at the onset in the district court, whether or not our client had a viable claim under the Rehabilitation Act of 1973, Section 504. What is her claim? Come again, Your Honor? What is her claim? That's a good point. We have a number of claims in the case. They go back a little bit to the onset of Texas law. Texas law has this unique section in it, Your Honor, that's Chapter 164. How come religion is in federal law? If you give me a moment, I will absolutely get there. Literally it's the子 settlement facilities marketing practices act. It lays out a number of representations and disclosures that a hospital must do before they can admit someone into the facility. If in fact they do not satisfy that criteria, it's considered a deceptive trade practices act, meaning as a matter of law it's not a medical negligence claim. Factually what happened to Ms. Hefner is that she went to a hospital and she did not receive any of these disclosures or any of these representations. We brought a case forward in district court based upon these failures and also a claim that she was exploited because of her mental health disability by the facility, i.e. a violation of section 504 of the rehabilitation act of 1973. As a matter of very short... And exactly how was that act violated? Exactly. Because they took advantage of her emotional state at that time. They preyed upon her disability and used that disability... In what way did they prey upon her disability? They took advantage of her mental state. They admitted her to the hospital without... Did she go there and say that she had a mental problem or did she not? She went there saying that she did not. That she had a mental problem? Yes, absolutely. And you're saying that they violated the rehabilitation act by admitting her to a mental facility notwithstanding that she came there for that very service? She went there to talk to somebody. She didn't go there to get admitted to a mental health facility and in fact the threshold issues that... Who was she trying to talk to? She went to talk to a counselor. Absolutely. A counselor? Yes, Your Honor. Well, an admission person. You know, it's a good question. We don't exactly know who she spoke to as yet, but it was an intake person for the facility. Well, she's your client, right? Right. Well, we just have the medical record. We haven't had any discovery yet. Once again, the case has just started. I know. Wow. Right. But you know why she went there. Yes, sir. And you should know who she talked to, I suppose. Well, she spoke to an intake person. I do know that. The issue, Your Honor, is not whether or not... So who violated her rights? The intake person? Yes. And the facility, as a representative of the facility, they represented her rights. And they did this, and the sole basis of your claim is they, at that point, put her in a mental facility without filing a proper documentation or advising her of rights? All of the above. They didn't provide the proper disclosure. One of the disclosures is that they give the person knowledge about what their insurance costs are for the day or the time that they're going to be there. They also give a disclosure that the doctor and the other professionals are going to charge them separately for the services that they're going to get. They're also supposed to get a full array of knowledge about the patient's bill of rights. Then how do you tie this back to the Rehabilitation Act? Because they took advantage of her emotional state at the time. Anytime you have an exploitation of an individual... And how did they take advantage of her exploitation? Because of her emotional state at the time, they just got her into the hospital without signing any consents. There's no consent form that she admitted herself. There's no form that they provided to her... So we get down to it, and the disability claim that you got is they failed to fill out the paperwork to admit her to the hospital. Is that correct? It's related to that. That's absolutely right, Your Honor. It's also a false imprisonment claim. False imprisonment? Yes, Your Honor. That's a state claim. We had a case just before this. This case is before Judge McBride in Fort Worth, Your Honor. We had another case before Judge Reid O'Connor on the exact same issue. Exact same issue. Whether or not the facility satisfied the criteria under the Treatment Facility Marketing Practices Act. And before Judge Reid O'Connor... Now that's a state claim you're talking about now. No, no. Reid O'Connor is a federal judge. I'm saying he's a federal judge, but the claim that you just articulated, is that a state claim or a federal claim? It was both, Your Honor. We had, you know, under Rule 8, we could have alternative claims. Right. So we have alternative claims. There's nothing wrong with that. So anyway, we were before Judge O'Connor with the exact same kind of fact pattern. And there, we went through the 12B6 motion, similar to what counsel did in this case. And Reid O'Connor and Judge O'Connor ruled against it. We went through discovery. The defendants filed a motion for summary judgment on the Rehabilitation Act claim. And we went through pleading, replies, responses, oral argument before Judge O'Connor. And he finally came around to agree with us that there was a bona fide Rehabilitation Act claim. Now, the reason why this is important, Your Honor, is because I'm here on a plausibility standard on the 12B6 motion. I don't have to prove my case today. I just have to prove that what my arguments are are plausible. And I can say with a straight face that the fact that the federal judge sitting in the office down, just down a few feet away from Judge McBride, found in favor, after all 12B6 motion for summary judgment, I find it hard to, in my way of thinking, of course, it's hard to believe that I don't have a plausible claim on behalf of Ms. Heffner. Well, I haven't been convinced of it. I'm not Judge McBride, but I haven't been convinced of it yet. I'm listening to you. I understand, Your Honor. The briefs do not convince me of that. I understand. I appreciate the questions. I know. I'm trying to find out. That's our job. Anything more on that thing? Proceed any way you want to. I need to catch up to myself here. Going back a step, can civil rights claims live side by side by a medical malpractice claim? Well, the answer is yes. Does that mean that every single thing that happens in a hospital is a medical malpractice claim? The answer is no. We had a case that went through Fort Worth, went through the Fifth Circuit, all the way to the Supreme Court in 2000, Rotella v. Wood. That was based upon RICO. There it occurred in a mental health hospital. It was arguments of conspiracy. Now, RICO is not involved in this case. Not exactly, but we do have a conspiracy claim between the two facilities, Your Honor. My point is that RICO... But RICO is not alleged as a ground for federal jurisdiction. Is that correct? No, not in this case. Not as yet. If we get a chance to replead, we'll likely add it. Because we'll probably be adding the corporate identity as well, if we get that far, Your Honor. But my real point for the moment is that a civil rights claim can live outside or separate or apart from a medical malpractice claim. We saw it in that case. We saw it in a case recently before the Supreme Court, Universal Health Services v. United States, X. Rel. Escobar. It was a key TAM case based upon deceptive billing. Once again, there was something that happened in the hospital, but separate and apart from that, there's a cause of action that exists. We know that there's Eighth Amendment claims for people who have medical claims while they're incarcerated that live separate and apart from a medical malpractice claim in the same case. So I bring to the Court that there's no reason that a 504 claim cannot also live side by side with a medical malpractice claim. In fact, we have provided a number of, in our briefs, case law where different courts have found, not including the Trimble case which you mentioned, Justice Reed O'Connor. What do you mean live side by side? Well, that means you can also have, like any case, you can have a state claim and a federal claim. Yeah, that's fundamental. Correct, right. So I'm just reiterating that, Your Honor, if you don't mind. And in our brief, we noted that there's cases of Smith v. Forrest Maynard, Inc. case out of Alabama, that found that there's a 504 claim and it could exist in a hospital setting. Lees v. Indian River County Hospital District, 11th Circuit case. Who is contesting that you have no right to assert both federal and state claims in your complaint? No one's contesting that. I think they're contesting that. I'll pass on that then. Thank you. Thank you, Your Honor. So I think then the issue is do we have a Rehabilitation Act claim that can stand alone? Well, the answer is in other courts they have found yes. Now, I understand that this court may find no or believe no, but the issue for today is whether I have a plausible argument that there's a Rehabilitation Act claim. And based upon the history of a case exactly like this, the answer, I believe, is that we do have a plausibility claim. Now, we may get, if we get far enough ahead. Are you talking about Trimble when you say, is that what you're referring to just now in light of another case? Are you talking about Trimble? Well, that's on point, in fact. Okay, well, all we're talking about here, have you brought in your complaint now a sufficient set of allegations or in the amended complaint, if we get to that, if it was sufficiently filed? So it really doesn't matter if there's another case with somewhat similar allegations. We have to look at these allegations and whether you sufficiently alleged that you're dealing with a client with a disability subject to the Rehabilitation Act. I'll move on to that point, Your Honor. The answer is yes. We've alleged that in our original complaint and hopefully we saw it as our amended complaint. She was a person with a disability. She satisfied all the criteria of a person with a disability. In fact, arguably, I think the hospital defendants' appellees would be stopped from saying she didn't have a disability because they're the ones that admitted to the hospital and thought that she needed to have her liberty interest restrained for a couple days. So we think we satisfy that element. We also know that they received federal funding, so she satisfies that element. There's also an issue about whether or not she was treated adversely. Well, once again, she was put into the hospital without signing herself in, without consents, without getting disclosures, without her due process rights being respected. And was that done solely because of her disability? Fifth Circuit case law is pretty clear that if you want to deal with the issue solely, it should go to a jury. That occurred. The court in Bennett-Nelson v. Louisiana Board of Regents said that. The court in Pace v. Bogalusa noted that in a footnote. And the court in the case of Farmer v. Brennan also noted that fact issues regarding whether or not a person was discriminated on the sole basis of disability is best left for a motion for summary judgment. So I hope I answered your questions about whether or not she satisfies those criteria, at least for pleading purposes. And I do believe for pleading purposes we've met our burden on that issue, Your Honor. There's also been some issues brought up about some of the procedural concerns about the timeliness of filing. And in fairness to the good Judge McBride, who I know for over 25 years, he actually swore me into federal court. I've been in his office. I've been before him numbers of times. He's great. But on this issue of electronic filing and being the only judge in the country that doesn't permit electronic filing, it creates problems. And this is a case where it created a problem. So arguably if we had been able to submit some of these pleadings through an electronic filing system, that would have been done just fine. My colleagues here have argued that we had not pled correctly in our motion for reconsideration the standard necessary to have our original request to amend the complaint satisfied. Well, the standards for reconsideration under Rule 59 are simple. The judge made an error of law. There's a manifest injustice that occurred. And that you can't use the motion for reconsideration to argue – to re-argue or re-litigate things that you had the opportunity to argue the first time. Well, the problem is we never got the opportunity to argue them the first time. That's really the issue. The way the judge – the judge wrote his decision dismissing our case before we ever filed anything. So to say that we – I mean you have to file it timely, you know, I guess. Well, we did. What happened – I mean I'm not arguing about that one way or the other. I'm just saying. We – I believe we did file it timely. Okay. But once again, you know, this was the first time that we filed a case. Colleagues filed a motion to dismiss. We responded. And the judge issued an order. Actually, the judge issued an order before we could respond. And I think in terms of fundamental fairness and due process to the judge, to the courts, and most importantly to my client, we should have the opportunity to amend the complaint. Thank you. Counsel. May it please the court. My name is Derek Carson, and I represent Apelli Texas Health Arlington Memorial Hospital. Apelli's would submit that this case is controlled by this court's decision in Velma v. Eureka Company. In Velma, the plaintiff had pled a case that consisted solely of state law claims. The district court granted summary judgment and dismissed all those claims. And then after entry of final judgment, the plaintiff filed a motion seeking leave to add federal claims, and the district court denied that request. This court affirmed the district court's decision on that point and noted that a post-judgment request for leave to amend is no longer governed by Rule 15a's leave should be freely granted standard, but rather it's controlled by Rule 59 or 60. That is, until the judgment is vacated under Rule 59 or 60, no post-judgment amendments can be allowed. And in Velma, this court noted that the plaintiffs below could have raised and asserted their federal law claims as part of the same case when they pled their state law claims. And so because there was no satisfaction of Rule 59, there was no error in denying leave to amend the complaint to add those later federal claims. That's exactly what we have here. The plaintiff pled a case. The district court granted an order dismissing the case. After entry of final judgment, a motion for leave was filed and a motion for reconsideration was filed. I don't think that's what the record actually shows. I mean, I had my able law clerk to look into this, and it was like the motion for amend the complaint was stamped filed at 1106. The judge entered its order at 256 that afternoon. So technically, I mean, of course it's not technically, but as a matter of fact, it was filed with the clerk before the judge entered his order. And I don't know what kind of confusion that may have been attributable to at the district court level. Sure, Your Honor. I must have not caught the precision of the timestamp. I just saw the order in which they were documented. Well, you're right about that. They were documented in the order you're talking about. Documented, I mean. But even if Rule 15-9 is not applied here, even if Rule 15-A is applied, it nevertheless was not an abuse of discretion to deny the request for leave. There were a number of factors that counseled in favor of denying leave. The first was, as the panel already pointed out, the motion for leave wasn't filed. It wasn't even received by the clerk at all at the front desk until the 30th, and the request, the response to the pending motion to dismiss was due on the 29th. In fact, a previous extension of that deadline had already been granted, and nevertheless it wasn't filed until after the deadline to respond. The other point to be made here is probably even more important, which is that when the motion for leave was filed, it wasn't accompanied by a proposed amended complaint as required by Local Rule 15.1. And the Northern District cases state that that alone is a ground for denying leave to amend your complaint. But perhaps even more importantly than that is that in the motion for leave itself, it doesn't make any showing for good cause. Even under Rule 15-A's liberal standard, there was no showing made at all about why leave should be granted. It was just sort of a matter of fact this is not being filed for purposes of delay sort of request. And so even under Rule 15-A, some sort of showing has to be made. To hold that it's an abuse of discretion under these circumstances to deny leave is essentially to expand Rule 15's time period for filing amendments as a matter of course, which would of course be error and conflict with that rule. My colleague who represents the other hospital is going to address the points about futility. And so given the items pointed out about the timing of the filings, if Rule 15-A doesn't apply, that will certainly— Well, the timings that I referred to are correct and incorrect. It was still a day late, as I understand it, in filing. It was still a day late. The relevance would simply be whether or not it's post-judgment, which would mean that Rule 15-9 has to be met and it's controlled by VELMA, or whether it was filed before entry of judgment and you'd still be looking at Rule 15. But as Your Honor noted, the hospitals would agree that it was still a late filing. Is that all you have? Thank you, Your Honor. May it please the court, counsel. My name is Grant Blaise and I represent Texas Health, Harris Methodist, Fort Worth Hospital. Counsel for the other hospital has, I believe, adequately addressed the procedural portion of this case. Although I would like to reiterate, and you're right, Judge Jolly, there is a little bit of inconsistencies or confusion about the timing. If you look at the court's judgment, it has a stamp, but it does not have a time. So all we had, as it relates to the electronic filing, is we had a judgment and then a motion for leave. But regardless of the timing issue, I believe Your Honor correctly pointed out, this came a day after a response to the 12B6 motion was to be filed. Rather than filing a response, he filed a motion for leave to file the first one. What I understand is that you filed a motion to dismiss and then the plaintiff in the case filed a motion to extend the time. So that was a month that had been appended in the district court and no response to it one way or the other.  Plaintiff had an absolute right as a matter of course to file a response or an amended pleading in response to our 12B6 motion without leave of court. He did not do that. Rather, he saw it on the day that the response or amended filing was to be filed, he filed a motion for leave to extend that time for a week, which was granted. And then that week came and went and there was no response to the 12B6 motion and there was no motion for leave to file a First Amendment complaint. The day after the response or other motion was due, that's when the filing occurred. Now at that point, leave was to be obtained and granted under Rule 15, leave is to be freely granted. However, you have to still have some reason why you want that to be filed. The court is vested with the discretion to grant or deny a motion for leave. In this particular case, it was a perfunctory motion. It basically said, Your Honor, we'd like to file a First Amendment petition respectfully submitted. It did not contain the First Amendment petition, First Amendment complaint. It just said, please let us do it. Was any amended complaint ever filed? An amended complaint was not filed at the time he filed his motion for leave. When was it filed? It was filed when he filed his motion for reconsideration after the judgment had been entered. So at the time, even assuming the First Amendment complaint or the motion for leave to file the First Amendment complaint was filed before the judgment was entered, the court had a let me file a First Amendment complaint respectfully submitted. He had no First Amendment complaint. He had no justification for, hey, why am I now seeking to leave to file a First Amendment complaint? There was nothing. So the court has, again, while— You were going to talk about futility, correct? Yes, Your Honor. Well, why don't we talk about—in other words, assuming that the district court abused its discretion, allowing an amendment, would it have been futile or not? Yes, Your Honor. If you look at the allegations in the first—Counsel concedes the original complaint does not give rise to a Rehabilitation Act claim. He has not brought that forth on a—he has not said the court abuses discretion in ruling on a 12b6 motion. What he's saying is, hey, my First Amendment complaint has fixed the problem. The problem is the First Amendment complaint does not fix the problem. The Rehabilitation Act was not enacted in order to supply a federal medical malpractice cause of action. And I believe that the cases of McGugan out of the Seventh Circuit and the University Hospital case out of the Second Circuit— excuse me, the McGugan case is also out of the Second Circuit, and the Grisant case out of the Seventh Circuit are instructive here. As a matter of fact, in the McGugan case, it's almost identical facts where an individual claims that she was forcibly admitted and retained in a psychiatric hospital, and she sought a Rehabilitation Act remedy or cause of action. The problem is the elements of a Rehabilitation Act claim do not fit within the confines of the fluid concept of medical treatment. And a couple of, I guess, important holdings by the court or reason by the court in the McGugan case and the University Hospital case reflect why. Section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to and thus improper to consideration of the services in question. And in this particular case, Ms. Heffner came to the facility for treatment related to the underlying handicap that she now claims serves as a basis for the Rehabilitation Act claim. We treated her for her alleged mental problems. She now quarrels with how and in what manner we treated her, but we didn't discriminate against her. We didn't deny her treatment. We just engaged in treatment that she does not agree with, and she says we did a bunch of things wrong. She has a state law remedy for these, but trying to fit this into a Rehabilitation Act case requires the court to get into the discrete dynamics of what should or shouldn't be done for treatment of the mental condition that forms the basis of the Rehabilitation Act claim. When the court entered the order of dismissal, did it save the state claims? He dismissed the state claims without prejudice to allow for refiling in the state court. He did not do it. And this is where you get into whether or not an individual with a handicap who is otherwise qualified, which is a requirement of Section 504, is discriminated against solely because of the disability. And the courts that address this issue in the context of medical care and treatment for the underlying disability that forms the basis of the claim essentially have found you can't be otherwise qualified because the nature of the disability has to give rise to the claim, not the nature of the service. Isn't there an allegation, maybe not timely made, that your client in a fraudulent, intentional manner, whatever it is, signed her into the treatment facility? It seems to me intentional acts, fraudulent acts might have a role to play. What's your response to that role to play in a Rehabilitation Act? And even if you're claiming that medical treatment was improper, it's not really negligence. It's an intentional effort by the hospital to do whatever improper things the hospital was trying to do by getting another patient, which is some of the allegations in the complaint. Sure, Your Honor. I guess you can couch it under the terms of intentional act or fraud or negligence. It's still an act directly related to the underlying handicap that they claim gives rise to the act. And so now we're going to be parsing it. The Rehabilitation Act is not meant to serve as a remedy for handicapped individuals who believe that they've been done wrong by the people treating their handicap. What it is, is it's – and I think the Magoogan Court adequately addresses this. The term otherwise qualified cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning. Where the handicapping condition is related to the condition to be treated, it will rarely, if ever, be possible to say that a particular decision was discriminatory. They have a problem with how we administered her, how the intake process went, but it was still directly related to the care provided for the underlying handicap. That's not what this – again, if you look at the Second Circuit, I think they adequately articulate kind of the reason you're trying to fit a square peg in a round hole with regard to a federal medical negligence or medical malpractice statute. The alleged fraud and the alleged actions that we engaged in, while he claims are intentional, are still related to treatment. We didn't deny treatment. We just treated her in a manner that they disagree with, whether that's negligent treatment, whether that's intentional treatment, whether or not that is fraudulent treatment. It's still the treatment itself, which the courts have said you can't really use the Rehabilitation Act because that's not what the discrimination is. The discrimination is denial of access to programs, to transportation, to employment, and it can be denial of access to a hospital if, for example, we have accessibility problems. But when you try to then tie the treatment for the condition to that claim, all you're doing now is establishing some sort of federal remedy for malpractice or wrongful conduct by the hospital that is not afforded people that don't have a mental problem. If I just come to the facility and I've got something wrong with my leg and they do the same thing, they don't give that patient consent or anything, they don't have a Rehabilitation Act claim. So in this case, Your Honor, I believe that if you look at the case law that we've cited on a brief, it adequately illustrates why this is not a Rehabilitation Act claim. Thank you. Just briefing on the issue of intentional acts relative to their occurrence in a hospital or a mental health facility of any type. State law has already said that intentional acts are not medical malpractice claims. Under Tover v. Pecano, we put that on our brief. National Fire Insurance Company of Hartford v. Radiology associates when something rises to the level of criminal concern. It's also on our brief. So there can be certain acts that occur in a hospital that are not medical malpractice claims. Siracolog v. Rose was a Texas Supreme Court case out of 1994 that specifically said that deceptive trade practices are not medical malpractice claims and can be construed otherwise. Also, there's a case, Baker v. Bowles. It's a Northern District case that we cite that when medical failures are not based upon a medical decision but based upon deliberate indifference or the failure to provide for some other untoward reason, i.e. based upon disability, though disability was not issued in that case, then it is action law under 504. We agree with the general proposition that the Rehab Act is not used for medical malpractice. We're not saying it is. We're saying it's separate. And there's a litany of case law in our briefs that say Section 504 claim can and does exist side by side in medical malpractice cases. It's not an instead of. It's an and also. And we're saying and we have pled that. So we're not saying that the Rehab Act. We do agree that the Rehab Act cannot be used for medical malpractice claim because we're not saying deceptive trade practices under Texas law under the Treatment Facilities Marketing Practices Act is not a medical malpractice claim. There was an issue about procedural issue about whether or not we attached a complaint when we filed for a motion to for leave of court to file an amended complaint. We sent a letter. Our records show that it was. I don't understand what you're just telling us. Your records show that you did attach the complaint. Oh, yeah. Yeah. Yeah. We have a letter that says it was. You know, I wasn't at the envelope. By what's in the court docket and any effort you could have made in district court to supplement what that shows. I think in fairness, if we had assuming for a second we were mistaken and did not send it under a normal electronic filing system, we would have got a deficiency notice. We would have known about that right away. But in a way we leapfrogged that issue when we went to the motion for reconsideration because in the motion for consideration, we asked that it be reconsidered. Now, and the request to amend the complaint be reconsidered. Council provides a number of cases that they use to support their proposition that we are foreclosed from the reconsideration and the amended complaint for these procedural grounds. The cases that they provide not only don't help them, they actually help us. So they have this one case, the Yelmer v. Eureka Company, that was on a motion for summary judgment. Here we just had a 12B6 motion. They also cite this case, Ainsworth v. Wells Fargo Mortgage Company. That was a case where someone did an amended complaint over a year later after a number of activities had taken place and after a scheduling order. As we know, we had no scheduling order in this case. We had no discovery in this case. This case was just summarily dismissed before we ever had a chance to respond. They also cite a case hosting Extreme Ventures. There the client, and that's the reliance that we should be foreclosed for filing this amended complaint. There, that case, there had been three amended complaints and over 30 discovery motions. They also cite a complaint, Chavez v. Franklin, for the reason that we should not be able to amend our complaint. Well, in that particular case, there had been a Chavez 1 and a Chavez 2 that had been litigated, and the courts were pretty well clear what Mr. Chavez, who was in jail, was trying to say for the third time. Here we have the onset of a case. Literally, it's a plausibility standard. Have we shown that the person had a disability? Yes. Have we shown that the person, i.e., had some discrimination based upon that disability? Yes. It was exploited because of it. The issue of solely, well, may be left for another day based upon Fifth Circuit case law. So we would ask that the case be remanded back to the district court and given the opportunity to proceed accordingly. Thank you so, so much. I appreciate everybody's questions and interest. Thank you. Thank you. Thank all three of you for bringing this case to us, helping us understand it.